IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
February 20, 2018 Session

## JOSEPH J. LEVITT, JR. v. CITY OF OAK RIDGE, ET AL.

**Appeal from the Chancery Court for Anderson County**
**No. 11CH3003      M. Nichole Cantrell, Chancellor**

_____

### No. E2016-02140-COA-R3-CV

_____

Joseph J. Levitt ("Owner"), the owner of the Applewood apartment complex located in Oak Ridge, Tennessee, appeals the September 14, 2016 order of the Chancery Court for Anderson County ("the Trial Court") granting summary judgment to the City of Oak Ridge, the Oak Ridge Board of Building and Housing Appeals, and Denny Boss (collectively "the City") in this suit seeking to overturn the City's order that six of the Applewood buildings be vacated and demolished.[1]  Owner raises issues on appeal regarding the adminstrative warrants and whether the decision of the board was arbitrary, capricious, or illegal.  We find and hold that the adminstrative warrants satisfied the requirements of Tenn. Code Ann. § 68-120-117 and that the decision of the board was not arbitrary, capricious, or illegal.  We, therefore, affirm the Trial Court's grant of summary judgment.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed**
**Case Remanded**

D. MICHAEL SWINEY, C.J., delivered the opinion of the court, in which JOHN W. MCCLARTY and W. NEAL MCBRAYER, JJ., joined.

Joseph J. Levitt, Jr., Knoxville, Tennessee, pro se appellant.

Dan R. Pilkington and Brian R. Bibb, Knoxville, Tennessee, for the appellees, City of Oak Ridge, Oak Ridge Board of Building and Housing Appeals, and Denny Boss.

---

[1] The Trial Court noted in its September 14, 2016 order that: "any determination that the building should be demolished was vacated by agreement of the parties and the only finding of the Board that is for review under this writ of Certori [sic] granted by the Court was whether or not the building was unfit for human occupancy and was to be vacated."

# OPINION

## Background

Owner filed a complaint in the Trial Court seeking to overturn an order of the Oak Ridge Board of Building and Housing Appeals ("the Board") rendered in February of 2011 that ordered six apartment buildings located in the Applewood apartment complex ("Applewood") in the City of Oak Ridge in Anderson County, Tennessee to be vacated and demolished[2] within ninety days. Applewood includes thirteen buildings. Issues involving Owner, the City of Oak Ridge, and Applewood have been before this Court three times previously. *Levitt v. City of Oak Ridge*, No. E2011-02732-COA-R3-CV, 2012 WL 5328248 (Tenn. Ct. App. Oct. 30, 2012), *no appl. perm. appeal filed* ("*Levitt I*"); *Levitt v. City of Oak Ridge*, 456 S.W.3d 547 (Tenn. Ct. App. 2014) ("*Levitt II*"); *City of Oak Ridge v. Levitt*, 493 S.W.3d 492 (Tenn. Ct. App. 2015) ("*Levitt III*"). The six specific Applewood buildings at issue in this case are 101 E. Hunter Circle, 102 E. Hunter Circle, 103 E. Hunter Circle, 112 E. Hunter Circle, 114 W. Hunter Circle, and 120 W. Hunter Circle.

This case was stayed for a period of time pending this Court's decision in *Levitt I*. After this Court issued its Opinion in *Levitt I*, the stay was lifted. The City then filed a motion for summary judgment alleging, in pertinent part, that the decision of the Board was supported by material evidence and that there was no evidence that the decision was illegal, arbitrary, or capricious. Owner responded agreeing that the following facts[3] were undisputed[4]:

> 5. The Order and the Board's decision were rendered after evidence and testimony were presented at a January 13, 2011 hearing before the Board.
>
> * * *
>
> 12[.] Corum Engineering was hired by the City to perform a structural evaluation on the condition of the apartment buildings.
>
> * * *

---

[2] See footnote 1. There are no issues on appeal regarding the order to demolish.

[3] Owner agreed that other relevant facts also were undisputed. In this Opinion, however, we confine our discussion to only the most pertinent of the undisputed facts.

[4] These statements were taken from "Plaintiff's Statement of of [sic] Undisputed Facts in Opposition to Motion for Summary Judgment," and citations have been omitted.

14. After the inspections, the City staff and Corum Engineering developed their findings independently.

Owner also agreed that the following material facts, among others, were undisputed as of 2009[5]:

15. The inspections and subsequent reports indicated a multitude [sic] Housing Code Violations and structural deficiencies with the four (*sic*) properties.

16. Corum's inspection revealed, among other issues, cracks in the foundations of the buildings, lack of ventilation, broken windows, damaged floor joists, improperly attached joists and decking which were pulling away from the main structure, evidence of wood destroying insects activity, asbestos — like materials noted to be in poor condition in the basement and crawl space, mold deposits, inadequate floor girders, temporary posts/columns being used as permanent supports to support the front wall of one building, tree roots in the crawl space affecting the foundations, multiple plumbing leaks, lack of a vapor barrier, damaged roofing material, etc.

17. With respect [sic] the six (6) structures, the Corum engineering Report stated the following conclusion:

Structural defects found in the apartment . . . [at issue before the Court] are noted in this report to have structural failures. If these structural defects are not corrected immediately, a complete failure of the structural integrity of the framing system could occur causing the top floors of each building to collapse through the structure caused by lack of support. We recommend none of the apartments with structural defects be occupied until the recommended corrective repairs are made to these buildings. Standing water, old debris, and mold like materials found in all four buildings presents health and safety hazards to all tenants of each building.

18. The Corum report also included and referenced over one hundred (100) pictures of the structural deficiencies with the premises.

19. The City staff likewise noted multiple deficiencies and violations including structural concerns to the buildings themselves such as rotten and inadequate flooring girders, as well as various health concerns including mold and asbestos like materials. A full list of deficiencies as swell [sic] as photographs can be found in the Case Summary and Recommendation for each property presented to the Board.

---

[5] See footnotes 3 and 4.

20. On or about May 7, 2009 and June 16, 2009 violation notices were sent to the Plaintiff by certified mail.

21. The City also sent the Plaintiff the reports compiled by Corum Engineering and the City Inspection Reports.

22. The reports indicated a large number of violations.

23. Violations listed in the City inspection reports included both health and safety hazards including excessive debris and lack of smoke detectors as well as significant structural issues including but not limited to a number of beams, girders, floor joists found to be rotten, undersized, damaged by infestation and subject to both plumbing and storm damage.

24. In addition, the inspections and subsequent reports also noted that dead animals and animal feces were found under the structures in addition to standing water resulting in excessive mold.

25. The Plaintiff was ordered by letter to correct the deficiencies found by City staff and Corum Engineering.

26. The letter also provided that the City expected to hear from the Plaintiff within fourteen (14) days of the noticed [sic] with compliance timelines.

* * *

31. Mr. Boss testified [at the hearing before the Board] that Plaintiff did not notify that (*sic*) the City that any structural repairs had been made or ask the City to reinspect the structures for compliance.

32. Likewise, the City did not receive an application for building permits to make repairs to the buildings.

After a hearing on the motion for summary judgment, the Trial Court entered its order on September 14, 2016 granting summary judgment to the City after finding and holding, *inter alia*:

> On March 27, 2009, the City of Oak Ridge obtained three (3) Administrative Warrants for three (3) of the units at issue. On April 24, 2009, the City obtained Administrative Warrants on the other three (3) units. The Warrants were executed on March 30, 2009, and April 29, 2009, upon which time the units in question were inspected by the City of Oak Ridge as well as Corum Engineering, which was a private engineering firm hired by the City to do structural evaluation on the units. After the inspections, the City and Corum Engineering developed their findings independently. The inspections and subsequent reports indicated that multiple housing code violations and structural deficiencies existed on the properties. The inspections revealed among other issues, cracks in the

foundation, lack of ventilation, broken windows, damaged floor joists, improperly attached joists, and decking which was pulling away from the main structure. Evidence of wood destroying insect activity, asbestos-like material noted to be in poor condition in the basement, in the crawl spaces, dead animals, and animals feces throughout the basement and in the crawl space, mold deposit[,] inadequate floor girders, temporary post/columns being used as permanent support to support the front wall of one building, tree roots in the crawl space effecting the foundations, multiple plumbing leaks, lack of vapor barrier, damaged roofing materials, etc.

The engineering report stated that the structural defects found in the apartment buildings if not corrected could immediately result in a complete failure of the structure integrity of the framing system which could cause the top floors of each building to collapse through the structure caused by the lack of support. It is recommended that the apartments not be occupied until the corrective repairs could be made.

On or about May 7, 2009, and June 16, 2009, violation notices were sent to the Plaintiff, via certified mail. The City also provided the Plaintiff a copy of the report compiled by Corum Engineering and the City inspection report. The violations that were reported including [sic] both health and safety hazard including excessive debris lack of smoke detectors, as well as significant structural issues including but not limited to the number of beams, girder, floor joists found to be rotten, undersized damage by infestation and subject to both plumbing and storm drainage. The Plaintiff was Ordered to correct the deficiencies by letter from the City on December 10, 2010.

The City sent the Plaintiff a notice of hearing before the Board of Building and Housing Appeals for each of the six (6) structures. The hearing took place on January 13, 2011. Codes enforcement supervisor, Denny Boss, and Wes McConkey of Corum Engineering offered testimony regarding the structural deficiencies. Mr. Boss testified that the Plaintiff did not notify the City that any structural repairs had been made and had not asked the City to re-inspect the structures for compliance. Likewise the City did not receive any applications for the building permits to make repairs to said building. After hearing testimony in the matter, the motion to declare the property unfit for human occupancy and use to declare the property a nuisance was made, and the motion carried 7-0.

\* \* \*

5

The second issued raised by the Plaintiff is that the Board was relying on an inspection that was approximately 20 months old at the hearing held on January 13, 2011. This Court acknowledges that the proceedings in this matter had been ongoing for a number of years but the fact that the inspections that were done approximately 20 months old is not reason to set aside the Board is [sic] decision as the Plaintiff had the approximate 20 months to complete the necessary repairs and have the City out to the properties to inspect those repairs. The evidence present at the Board hearing was that although some interior repairs may have been made, the Plaintiff presented no proof that anything had been done to address the serious structural deficiencies or [sic] the six units.

The Plaintiff argues that the City never obtained new Administrative Orders to reinspect the property however, again this Court notes that the Plaintiff never requested a reinspection of the property alleging that any repairs had been made that needed to be inspected. Therefore, the Court grants the Summary Judgment on this issue as well.

\* \* \*

Mr. Levitt, also raises the issue that Mr. Tedder, a witness which he intended to bring forth and testify before the Board, was not allowed to testify. Mr. Tedder was present at the hearing before the Board. Mr. Levitt indicated during the board hearing that Mr. Tedder was there to provide evidence and photographs on repairs that had been performed on the property. Mr. Tedder was an employee of Applewood, and he was not a registered engineer. The Board concluded that some interior work had been done on the premises however; there had been no request for inspection to show that the structural issues related to building had been repaired, and that because Mr. Tedder is not a structural engineer his testimony would have no basis on the structural deficiencies of the building. The Board also concluded that on the issue of majorial [sic] structural repairs, there had been no building permits pulled on behalf of Mr. Levitt or Applewood and no re-inspection requested by Plaintiff that would show that any of the major structural repairs had been made to the apartments in question. This Court finds that the Board did not exceed its jurisdiction act illegally, arbitrarily, capriciously, or fraudulently by not taking the testimony of any employee of the Plaintiff as objective proof that the structural deficiencies of the building had been corrected. Therefore, this Court grants the Defendant's [sic] Summary Judgment on this issue as well.

6

* * *

The Court notes as a whole that the owner simply failed to provide any proof that the subject buildings had been repaired since the inspections conducted after the City obtained the administrative warrants in 2009. The subject buildings had not been repaired to the state such that they were now fit for human occupation and there were no inspections done at request of the owner to show or to prove that repairs had been made. There were no buildings permits pulled for the major structural repairs that needed to be done. Accordingly this Court holds that there was no material evidence from which the board could infer that the plaintiff in this matter had taken steps necessary to make sure that the buildings were now fit for human occupation. Finding no issue of material of fact, the Court grants Summary Judgment to the Defendants. This Court does note for the record that any determination that the building should be demolished was vacated by agreement of the parties and the only finding of the Board that is for review under this writ of Certori [sic] granted by the Court was whether or not the building was unfit for human occupancy and was to be vacated. This Court finds that the board did not exceed its jurisdiction, did not act illegally, arbitrarily, or capriciously, or fraudulently, based upon the evidence that was presented at the board hearing.

Owner appeals the grant of summary judgment.

## Discussion

Although not stated exactly as such, Owner raises three issues on appeal: 1) whether the adminstrative warrants were illegal such that the evidence obtained through the warrants should have been excluded; 2) whether the Trial Court erred in granting summary judgment to the City after finding that the ruling of the Board was not arbitrary, capricious, and illegal; and, 3) whether Owner is entitled to an award of attorney's fees on appeal.

We first consider whether the adminstrative warrants were illegal such that the evidence obtained through the warrants should have been excluded. As pertinent to this issue, Tenn. Code Ann. § 68-120-117 provides:

**68-120-117. Administrative inspection warrant – Definitions.**

(a) As used in this section, unless the context otherwise requires:

(1) "Agency" means any county, city, or town employing a building official certified pursuant to § 68-120-113;

(2) "Building official" means any local government building official certified pursuant to § 68-120-113; provided, that such officials are acting in their capacity as an official of a municipality or county, and provided that the official is seeking to enforce the ordinances or codes of such local government; and

(3) "Issuing officer" means:

(A) Any official authorized by law to issue search warrants;

(B) Any court of record in the county of residence of the agency making application for an administrative inspection warrant; or

(C) Any municipal court having jurisdiction over the agency making application for an administrative inspection warrant; provided, that the judge of the court is licensed to practice law in the state of Tennessee.

(b) In the event that a building official is denied permission to make an inspection and a warrant is required by the Constitution of the United States or the state of Tennessee to perform such inspection, a building official may obtain an administrative inspection warrant in accordance with the procedures outlined in this section. Title 40, chapter 6, part 1, shall not apply to warrants issued pursuant to this section.

(c) The issuing officer is authorized to issue administrative inspection warrants authorizing a building official to inspect named premises. In so doing, the issuing officer shall determine from the affidavits filed by the building official, acting as an officer of the agency requesting the warrant, that:

(1) The agency has the statutory authority to conduct the inspection;

(2) Probable cause exists to believe that a violation of law has occurred or is occurring. For the purposes of this section, probable cause is not the same standard as used in obtaining criminal search warrants. In addition to a showing of specific evidence of an existing violation, probable cause can be found upon a showing of facts justifying further inquiry, by inspection, to determine whether a violation of any state law or local building, fire, or life safety code is occurring. This finding can be based upon a showing that:

(A) Previous inspections have shown violations of law and the present inspection is necessary to determine whether those violations have been abated;

(B) Complaints have been received by the agency and presented to the issuing officer, from persons who by status or position have personal knowledge of violations of law occurring on the named premises;

8

(C) The inspection of the premises in question was to be made pursuant to an administrative plan containing neutral criteria supporting the need for the inspection; or

(D) Any other showing consistent with constitutional standards for probable cause in administrative inspections;

(3) The inspection is reasonable and not intended to arbitrarily harass the persons or business involved;

(4) The areas and items to be inspected are accurately described and are consistent with the statutory inspection authority; and

(5) The purpose of the inspection is not criminal in nature and the agency is not seeking sanctions against the person or business for refusing entry.

(d) The issuing officer shall immediately make a finding as to whether an administrative inspection warrant should be issued and, if the issuing officer so determines, issue the warrant. No notice shall be required prior to the issuance of the warrant.

(e) All warrants shall include at least the following:

(1) The name of the agency and building official requesting the warrant;

(2) The statutory or regulatory authority for the inspection;

(3) The names of the building official or officials authorized to conduct the administrative inspection;

(4) A reasonable description of the property and items to be inspected;

(5) A brief description of the purposes of the inspection; and

(6) Any other requirements or particularity required by the constitutions of the United States and the state of Tennessee regarding administrative inspections.

Tenn. Code Ann. § 68-120-117 (2013).

Owner argues in his brief on appeal that the adminstrative warrants at issue are unpermitted general warrants and cites to a number of cases concerning search warrants in support of this argument. These cases, however, are not applicable to the adminstrative warrants involved in the case now before us. The adminstrative inspection warrant statute specifically provides that "Title 40, chapter 6, part 1 [which governs search warrants], shall not apply to warrants issued pursuant to this section." Tenn. Code Ann. § 68-120-117(b) (2013). As such, the cases that Owner cites regarding search warrants are not applicable to the adminstrative warrants involved in the case now before us. Given this, we find Owner's argument alleging that the adminstrative warrants in the case now before us are general warrants to be baseless.

Owner also raises several specific arguments with regard to the affidavits[6] underlying the adminstrative warrants. First, Owner argues that the affidavits fail to show "the statutory authority for the agency to conduct the inspections sought." Owner argues that the "City" referred to in the first paragraph of the affidavits as having adopted the International Property Maintenance Code alleged to be violated is not identified. We disagree. The City is identified directly above the first paragraph of each affidavit as being the "City of Oak Ridge." This argument is without merit.

Owner argues that the affidavits do not accurately describe the areas to be inspected as required by Tenn. Code Ann. § 68-120-117(c)(4) because no specific apartments are identified in the affidavits. We disagree with the contention that the affidavits do not accurately describe the areas to be inspected. The affidavits identify the specific buildings at issue and state that there is probable and reasonable cause to believe that violations of the International Property Maintenance Code as adopted by the City exist with regard to the buildings' structural soundness and sanitary conditions. This description is a sufficiently "reasonable description of the property and items to be inspected;" as required by § 68-120-117(e)(4). The area sought to be inspected was the structure of the buildings themselves, not items that may have been contained within the buildings or within specific apartments. As the areas to be inspected involved the structure of the buildings and not personalty likely to be found within the structure, the descriptions in the affidavits identifying the specific buildings satisfied the statute. Furthermore, we note that for the most part the cases upon which Owner relies in support of this argument are search warrant cases, which as discussed above, do not apply to adminstrative warrants.

Owner also argues that the adminstrative warrants are deficient because the affidavits do not state that the City had been denied access or had received a complaint. Again, we disagree with these contentions. The affidavits specifically state that "[t]he purpose of this inspection is not criminal in nature . . ." and that the City "is not seeking sanctions against [Owner] for refusing entry." Furthermore, the affidavits state that

---

[6] The six affidavits underlying the administrative warrants in this case are substantially similar, and we discuss them in this Opinion as a group with the single exception of one point we now address with regard to the warrant and affidavit for the building located at 114 W. Hunter Circle. In the affidavit for this specific building a typographical error in the first paragraph identified the building as being located at 114 E. Hunter Circle. Immediately after this typographical error, however, a further description of the building is provided including, among other things, a lot, block, and plat number identifying the building. Furthermore, in subsequent paragraphs the affidavit correctly identifies the building as being located at 114 W. Hunter Circle, and the warrant correctly identifies the building as being located at 114 W. Hunter Circle. As we are dealing with administrative warrants and not search warrants, and the mistake is an obvious typographical error, we find that the affidavit for 114 W. Hunter Circle sufficiently complies with Tenn. Code Ann. § 68-120-117.

"[t]he general interior conditions are unknown except as related by complaint." Owner's arguments are without merit.

Owner further argues that the affidavits do not comport with Tenn. Code Ann. § 68-120-117(c)(3), so as to allow the issuing officer to make the determination that the inspection is reasonable and not intended to arbitrarily harass. Again, we disagree with Owner. The affidavits provide a substantial list of suspected violations and give several reasons supporting probable cause to believe that the buildings suffered structural deterioration and sanitary problems. Furthermore, the areas to be inspected comport with the statutory inspection authority. The affidavits were sufficient to allow the issuing officer to make the determination pursuant to Tenn. Code Ann. § 68-120-117(c)(3) that the inspection was reasonable and not intended to arbitrarily harass the persons or business involved.

Finally, Owner objects to the following language contained in the affidavits:

During a request inspection by Applewood management to review exterior maintenance being conducted on [each specific building], Tim Ward did enter the basement and witnessed structural deterioration upon entry to the unsecured area in excess of normal conditions.

Owner argues in his brief on appeal that this entry into the basement was uninvited and illegal and that the issuing officer could not consider the information obtained from this uninvited and illegal entry as the basis for issuing a warrant for that building.[7]

Even if we were to find that the entry into the basement was uninvited and illegal as alleged, and we make no finding whatsoever regarding this allegation, and we were to exclude this ground from the affidavit, there were sufficient other grounds contained within the affidavits to support issuance of the warrants. The affidavits contain several other allegations obtained from other sources or vantage points supporting a finding that probable cause existed to believe that the buildings suffered from structural deficiencies and sanitary issues. As noted in Tenn. Code Ann. § 68-120-117(c)(2): "In addition to a showing of specific evidence of an existing violation, probable cause can be found upon a showing of facts justifying further inquiry, by inspection, to determine whether a violation of any state law or local building, fire, or life safety code is occurring." Tenn. Code Ann. § 68-120-117(c)(2) (2013). As the affidavits contained sufficient other "facts

---

[7] Owner cites to a case from the 7th Circuit in support of this argument. The citation contained within Owner's brief on appeal, however, is incorrect both within the brief's table of authorities and the argument section. It is not the responsibility of this Court to undertake a search for incorrectly cited cases upon which a party relies.

11

justifying further inquiry, by inspection," we need not determine whether the visit to the basement was uninvited and illegal. Tenn. Code Ann. § 68-120-117(c)(2) (2013).

We next consider whether the Trial Court erred in granting summary judgment to the City after finding that the ruling of the Board was not arbitrary, capricious, and illegal. As this Court stated in *Levitt I*: "This court cannot 'review this appeal using the standards of review normally associated with common-law writs of certiorari because the issues before us are based upon [the grant of a motion for] summary judgment.'" *Levitt* I, 2012 WL 5328248 at *8. In *Levitt I*, we noted: "While filing a motion for summary judgment in a certiorari case is not the ordinary route chosen by most defendants, Defendants were allowed to use Rule 56 of the Tennessee Rules of Civil Procedure to dispose of Owner's claims." *Levitt I*, 2012 WL 5328248 at *14.

With regard to summary judgment, our Supreme Court has instructed:

> Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Tenn. R. Civ. P. 56.04. We review a trial court's ruling on a motion for summary judgment de novo, without a presumption of correctness. *Bain v. Wells*, 936 S.W.2d 618, 622 (Tenn. 1997); *see also Abshure v. Methodist Healthcare–Memphis Hosp.*, 325 S.W.3d 98, 103 (Tenn. 2010). In doing so, we make a fresh determination of whether the requirements of Rule 56 of the Tennessee Rules of Civil Procedure have been satisfied. *Estate of Brown*, 402 S.W.3d 193, 198 (Tenn. 2013) (citing *Hughes v. New Life Dev. Corp.*, 387 S.W.3d 453, 471 (Tenn. 2012)).

* * *

> [I]n Tennessee, as in the federal system, when the moving party does not bear the burden of proof at trial, the moving party may satisfy its burden of production either (1) by affirmatively negating an essential element of the nonmoving party's claim or (2) by demonstrating that the nonmoving party's evidence *at the summary judgment stage* is insufficient to establish the nonmoving party's claim or defense. We reiterate that a moving party seeking summary judgment by attacking the nonmoving party's evidence must do more than make a conclusory assertion that summary judgment is appropriate on this basis. Rather, Tennessee Rule 56.03 requires the moving party to support its motion with "a separate concise statement of material facts as to which the moving party contends there is no genuine

12

issue for trial." Tenn. R. Civ. P. 56.03. "Each fact is to be set forth in a separate, numbered paragraph and supported by a specific citation to the record." *Id*. When such a motion is made, any party opposing summary judgment must file a response to each fact set forth by the movant in the manner provided in Tennessee Rule 56.03. "[W]hen a motion for summary judgment is made [and] . . . supported as provided in [Tennessee Rule 56]," to survive summary judgment, the nonmoving party "may not rest upon the mere allegations or denials of [its] pleading," but must respond, and by affidavits or one of the other means provided in Tennessee Rule 56, "set forth specific facts" *at the summary judgment stage* "showing that there is a genuine issue for trial." Tenn. R. Civ. P. 56.06. The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co.*, 475 U.S. at 586, 106 S. Ct. 1348. The nonmoving party must demonstrate the existence of specific facts in the record which could lead a rational trier of fact to find in favor of the nonmoving party. If a summary judgment motion is filed before adequate time for discovery has been provided, the nonmoving party may seek a continuance to engage in additional discovery as provided in Tennessee Rule 56.07. However, after adequate time for discovery has been provided, summary judgment should be granted if the nonmoving party's evidence *at the summary judgment stage* is insufficient to establish the existence of a genuine issue of material fact for trial. Tenn. R. Civ. P. 56.04, 56.06. The focus is on the evidence the nonmoving party comes forward with at the summary judgment stage, not on hypothetical evidence that theoretically could be adduced, despite the passage of discovery deadlines, at a future trial.

*Rye v. Women's Care Cntr. of Memphis, MPLLC*, 477 S.W.3d 235, 250, 264-65 (Tenn. 2015).

Owner argues in his brief on appeal that the ruling of the Board was arbitrary and illegal because the evidence submitted to the Board came from the inspections made pursuant to the warrants discussed above and that this evidence was over twenty months old by the time of the hearing before the Board. Owner also asserts that he testified that the structural deficiencies had been corrected, but the Board would not allow him to submit further evidence.

In *Levitt I*, this Court explained:

Tennessee Code Annotated section 13–21–102 permits a city "to exercise its police powers to repair, close or demolish" structures deemed

13

"unfit for human occupation or use." In exercising that power, the City of Oak Ridge ("the City") enacted a property maintenance code ("the Code") and created the Board of Building and Housing Code Appeals ("the Board"). The City tasked the city manager or the manager's duly authorized designee with issuing and causing to be served upon "parties in interest" and the owner of any structure appearing to be unfit for human occupation, a complaint stating the specific charges and a notice that a hearing would be held before the Board regarding the complaint.

Pursuant to the Code, the Board is limited to hearing "cases of structures unfit for human occupation or use" and "appeals of notices for housing violations." Likewise, the Board's jurisdiction is limited to determining "whether the structure is unfit for human occupation or use, whether a violation exists, whether the city manager's notice of violation is proper and/or whether" to grant "a request for an extension of time or waiver." However, the Board is not required to follow the rules of evidence generally applicable in a court of law or equity. Following a hearing on the aforementioned issues, the Board is to

> issue a written decision upholding or dismissing the notice of the city manager, or modifying the notice to the extent the [B]oard determines the order was improper, or granting or denying an extension of time for compliance or granting or denying a waiver, or declaring a structure unfit for human occupation or use.

In determining whether a structure is unfit for human occupation or use, the Board must consult the Code, which provides, in pertinent part,

> (3) *Unfit for human occupation or use; defined.* A structure is unfit for human occupation or use if any or all of the following conditions, which are dangerous or injurious to the health, safety, morals or general welfare of the occupants of such structure, the occupants of neighboring structures or other residents of the [C]ity, exist:
>
> > (a) Defects in the structure which increase the hazards of fire, accident or other calamities;
> > (b) Structural defects, including but not limited to: those whose interior walls or other vertical structural members list, lean or buckle to such an extent that a plumb line

14

passing through the center of gravity falls outside the middle third of its base; or those which exclusive of the foundation show thirty-three percent (33%) or more of damage or deterioration of the supporting member(s) or fifty percent (50%) or more of damage or deterioration of the nonsupporting portions of the structure or outside walls or coverings; or those which have improperly distributed loads upon the floors or roofs or in which the same are overloaded or which have insufficient strength to be reasonably safe for the purpose used;

(c) Lack of adequate ventilation, light, air, heat or sanitary facilities;

(d) Dilapidation or decay;[8]

(f) Disrepair, including having parts which are so attached that may fall and injure persons on or off the property; and

(g) Lack of adequate facilities for egress in case of fire or panic, or those having insufficient stairways, elevators, fire escapes or other means of egress in the case of an emergency.

Pursuant to the Code all structures deemed unfit for human occupation or use must be "declared unlawful and a public nuisance" and must be "repaired, vacated, demolished or otherwise abated." In determining whether a structure unfit for occupation or use should be repaired, vacated, demolished or abated, the Board must make its decision in accordance with the Code, which provides, in pertinent part,

> (5) *Standards for repair, vacation or demolition*. The following standards shall be followed in substance by the [Board] in ordering repair, vacation or demolition of a structure unfit for human occupation or use.
>
> (a) If the structure can reasonably be repaired, altered or improved so that it will no longer exist in violation of the [Code], it shall be ordered repaired, altered or improved to render the structure fit for human occupation or use or to vacate and close the structure as a place of human occupation or use.

---

[8] The Code did not contain a subsection (e).

(b) If the structure is fifty percent (50%) or more damaged, decayed or deteriorated from its original condition or value, it shall be ordered vacated and demolished or removed.

(c) In any case where the structure is in such a condition as to make it dangerous to the health, safety or general welfare of its occupants or the general public, it shall also be ordered vacated and the [Board] may additionally order the structure and the property to be secured in such a manner to protect the health, safety or general welfare of the public or persons on the property until such repairs or demolition has been completed, or may order other immediate actions reasonably necessary.

Once a structure has been declared unfit for human occupation or use, an owner may seek judicial review of the Board's decision by filing a petition for common law writ of certiorari. *McCallen v. City of Memphis*, 786 S.W.2d 633, 639 (Tenn. 1990). A common law writ of certiorari provides quite limited judicial review. *Willis v. Tennessee Dep't of Corr.*, 113 S.W.3d 706, 712 (Tenn. 2003). The scope of this review goes no further than determining whether the administrative body "exceeded its jurisdiction; followed an unlawful procedure; acted illegally, arbitrarily, or fraudulently; or acted without material evidence to support its decision." *Lafferty v. City of Winchester*, 46 S.W.3d 752, 758–59 (Tenn. Ct. App. 2000) (citations omitted).

*Levitt I*, 2012 WL 5328248 at **1-2 (footnote in original but renumbered).

As discussed above, the City made a properly supported motion showing that the Board did not exceed its jurisdiction, follow an unlawful procedure, or act illegally, arbitrarily, capriciously, or fraudulently and that the Board had before it material evidence to support its decision. The burden then shifted to Owner to show genuine disputed issues of material fact.

In his brief on appeal, Owner argues that the Board did not have before it material evidence showing the condition of the buildings at the time of the hearing. Owner asserts that the only evidence presented by the City showed the condition of the buildings over twenty months prior to the Board hearing. Owner asserts that the fact that "violations may have existed in the past, does not mean they now exist."

We disagree with the contention that the only evidence submitted by the City about the condition of the buildings was over twenty months old. Owner conceded in the statement of undisputed material facts to the deplorable condition of the buildings at the time of the inspections pursuant to the administrative warrants and conceded the fact that the City had notified Owner of the need to correct the deficiencies. Owner further conceded, in the statement of undisputed material facts, that Mr. Boss testified before the Board that Owner did not notify the City that any structural repairs had been made and that Owner did not ask the City to reinspect the structures for compliance. Owner further conceded that the City did not receive any applications for building permits to make repairs to the buildings. Owner testified before the Board that some repairs had been made, and Owner attempted to present the testimony of his employee Mr. Tedder about repairs. The Board determined, however, that Mr. Tedder was not an engineer and could not testify about whether the necessary structural repairs had been made. The Trial Court found that the Board did not exceed its jurisdiction or act illegally, arbitrarily, capriciously, or fraudulently by not taking the testimony of Mr. Tedder "as objective proof that the structural deficiencies of the building had been corrected." We agree. The Board had evidence before it that the structural deficiencies existed at the time of the inspection and had no evidence before it that the necessary structural repairs had been made to the buildings since that time.

The Trial Court found that the Board had before it evidence of the structural deficiencies, evidence that Owner had not notified the City of any structural repairs being made, evidence that no request for reinspection had been made, and evidence that the City had received no applications for building permits. We find and hold, as did the Trial Court, that the Board had material evidence before it to support its decision and that the Board did not exceed its jurisdiction or act illegally, arbitrarily, capriciously, or fraudulently.

The City made a properly supported motion for summary judgment showing that it was entitled to judgment as a matter of law, and Owner then failed to show any genuine disputed issues of material fact. We, therefore, affirm the Trial Court's September 14, 2016 order granting summary judgment to the City.

Finally, we consider Owner's issue regarding whether Owner is entitled to an award of attorney's fees on appeal. Owner requests an award of attorney's fees pursuant to Tenn. Code Ann. § 29-37-101 *et seq.* Given our disposition of Owner's first two issues as discussed above, we decline to award Owner attorney's fees on appeal.

17

## Conclusion

The judgment of the Trial Court is affirmed, and this cause is remanded to the Trial Court for collection of the costs below. The costs on appeal are assessed against the appellant, Joseph J. Levitt, Jr., and his surety.

_____
D. MICHAEL SWINEY, CHIEF JUDGE